## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**NOVO NORDISK A/S**
**and NOVO NORDISK INC.,**

      **Plaintiffs,**

**v.**                                                                    **Civil Case No.** _____

**THE INJECTION AND INFUSION**
**CLINIC OF ALBUQUERQUE, LLC,**

      **Defendant.**

## COMPLAINT

Plaintiffs Novo Nordisk A/S ("NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk") file their complaint against The Injection and Infusion Clinic of ABQ, LLC ("Defendant") for trademark infringement, false advertising, and unfair competition, and seek injunctive, monetary, and other relief.   Plaintiffs allege as follows on actual knowledge with respect to themselves and their own acts and on information and belief as to all other matters.

## <u>INTRODUCTION</u>

1.     Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat chronic diseases like diabetes and obesity.

2.     The development of semaglutide is an example of Novo Nordisk's commitment to innovation for those living with chronic diseases.   Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"):  Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes, and Wegovy® (semaglutide) injection for chronic weight management.

3.      Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide.

4.      Novo Nordisk is also the only company authorized to identify its FDA-approved semaglutide medicines using the trademarks Ozempic®, Wegovy®, and Rybelsus®.

5.      The FDA has not approved any generic versions of semaglutide medicines.

6.      To the contrary, the FDA has sent warning letters to companies that have claimed that their unapproved products have the "same active ingredient as Ozempic, Rybelsus, and Wegovy," noting that the Ozempic® and Wegovy® medicines are the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

7.      Novo Nordisk brings this action pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and related state law arising out of Defendant's infringement of Plaintiffs' rights in their Ozempic® and Wegovy® marks and Defendant's acts of false advertising and unfair competition.

8.      Defendant markets and sells to patients compounded drug products that purport to contain semaglutide, including by use of Novo Nordisk's Ozempic® and Wegovy® marks.

9.      Defendant nevertheless represents to consumers that its products are clinically studied and equivalent to the Ozempic®, Wegovy®, and Rybelsus® medicines .

10.     Defendant's conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024#:~:text=WARNING%20LETTER&text=As%20discussed%20below%2C%20FDA%20has,new%20drugs%20and%20misbranded%20drugs.

## THE PARTIES

11.     Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business in Bagsværd, Denmark.

12.     Novo Nordisk developed the Ozempic®, Wegovy®, and Rybelsus® medicines.

13.     NNAS has granted to NNI exclusive rights to market, advertise, promote, offer for sale, and sell Ozempic®, Wegovy®, and Rybelsus® medicines in the United States.

14.     NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business in Plainsboro, New Jersey.

15.     NNI promotes, offers, and sells Novo Nordisk's Ozempic®, Wegovy®, and Rybelsus® medicines throughout the United States, including in this District.

16.     Defendant The Injection and Infusion Clinic of ABQ, LLC is a New Mexico limited liability company with a registered business address at 8400 Osuna Road, NE, Albuquerque, New Mexico 87111, and a mailing address at 5901 Wyoming Boulevard, NE, Suite J-351, Albuquerque, New Mexico 87109, located in this judicial district.

17.     The Injection and Infusion Clinic of ABQ, LLC sells and promotes compounded drug products that purport to contain semaglutide, but that have not been approved by the FDA ("Unapproved Compounded Drugs").

18.     The Injection and Infusion Clinic of ABQ, LLC falsely claims or otherwise misleadingly suggests that its Unapproved Compounded Drugs are the same as or equivalent to the Ozempic®, Wegovy®, and Rybelsus® medicines.

## JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction over the Lanham Act causes of action pleaded herein pursuant to 35 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

20.    The Court has supplemental jurisdiction over the state and common law causes of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

21.    Defendant is subject to personal jurisdiction in this District because Defendant is a New Mexico-registered company and has a principal place of business in New Mexico.

22.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant operates in this District, manufactures and sells its compounded drug products that purport to contain semaglutide in this District, and otherwise conducts business in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC® AND WEGOVY® TRADEMARKS

23.    Plaintiffs use the trademarks "Ozempic and" "Wegovy" to identify and promote the FDA-approved Ozempic® and Wegovy® medicines.  The Ozempic® and Wegovy® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

24.    Ozempic® is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

25.    Ozempic® also lowers the risk of major cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease, as well as the risk of kidney disease worsening, kidney failure (end-stage kidney disease) and death from cardiovascular disease in adults with type 2 diabetes and chronic kidney disease.

26.    Wegovy® is indicated to reduce excess body weight and maintain weight reduction long term in obese adults and children aged ≥ 12 years, and some adults with weight-related medical problems, along with a reduced calorie diet and increased physical activity.

27.    Wegovy® is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of adverse cardiovascular events such as "cardiovascular" death, heart attack, or stroke in adults with known heart disease and who are either obese or overweight.

4

28.    Ozempic® and Wegovy® have been studied in clinical trials and are FDA-approved.

29.    Each of Ozempic® and Wegovy® has a unique safety and efficacy profile which is set forth in its respective product label.

30.    Ozempic® and Wegovy® are prescription-only medicines that should be prescribed only in direct consultation with, and under the supervision of, a licensed healthcare professional.

31.    Novo Nordisk first adopted and used the Ozempic® mark at least as early as 2017, and has used it continuously since that time.

32.    The Ozempic® trademark is inherently distinctive.

33.    Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Ozempic® mark in different channels, directed to physicians, other health care professionals, and patients, including on the websites ozempic.com and novonordisk-us.com.

34.    As a result of its use of the Ozempic® mark, NNAS owns valuable common law rights in and to the Ozempic® mark.

35.    Plaintiff NNAS owns U.S. trademark registration number 4,774,881, issued on July 21, 2015, for the mark Ozempic® for pharmaceutical preparations, in International Class 5. A true and correct copy of Plaintiff NNAS's registration for the Ozempic® mark is attached hereto as **Exhibit A**.

36.    Novo Nordisk's right to use its registered Ozempic® mark is incontestable.

37.    Novo Nordisk first adopted and used the Wegovy® mark at least as early as 2021 and has used it continuously since that time.

38.     The Wegovy® trademark is inherently distinctive.

39.     Novo Nordisk has promoted, advertised, and marketed its prescription-only medicine using the Wegovy® mark in different channels, directed to physicians, other health care professionals, and patients, including on the websites wegovy.com and novonordisk-us.com.

40.     As a result of its use of the Wegovy® mark, NNAS owns valuable common law rights in and to the Wegovy® mark.

41.     Plaintiff NNAS owns (a) U.S. trademark registration number 6,585,492, issued on December 14, 2021, for the mark Wegovy® for pharmaceutical preparations, in International Class 5; and (b) U.S. trademark registration number 6,763,029, issued on June 21, 2022, for the mark Wegovy® in a stylized form for pharmaceutical preparations, in International Class 5.  True and correct copies of Plaintiff's registrations numbers 6,585,492 and 6,763,029 for the Wegovy® mark are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

42.     As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic® and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® marks are exclusively associated with Plaintiffs, serve to identify genuine Novo Nordisk medicines, and are valuable assets of Novo Nordisk.

43.     As a result of Novo Nordisk's long use, promotion, and advertising of the Ozempic® and Wegovy® trademarks and medicines, the Ozempic® and Wegovy® trademarks are well-known, strong, and famous marks, and became such before any of the acts of Defendant complained of herein.

## DEFENDANT'S SALE OF UNAPPROVED COMPOUNDED DRUGS

44.     Novo Nordisk does not sell its FDA-approved semaglutide medicines, Ozempic®, Wegovy®, and Rybelsus®, to Defendant for resale or redistribution.

45.    Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide.

46.    The FDA has not approved Defendant's Unapproved Compounded Drugs.

47.    On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

48.    According to the FDA, compounding is a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

49.    According to the FDA, "[c]ompounded drugs are not FDA-approved.  This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

50.    The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs.  Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4]

51.    As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.

[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.

[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

for safety, quality or effectiveness.  Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[5]

52.    The process used to produce most "semaglutide" used in compounding is fundamentally different from the process used to produce the semaglutide in Novo Nordisk's FDA-approved medicines.  Novo Nordisk manufactures the semaglutide in its medicines, pursuant to its FDA approval, in yeast cells under a closely controlled multistep process that uses recombinant DNA technology.  Most compounded "semaglutide," however, uses a "semaglutide" manufactured via chemical synthesis.

53.    The chemical synthesis process, which is not used for the semaglutide in any FDA-approved semaglutide medicines, has resulted in new impurities, higher levels of known impurities, immunogenicity concerns, and potential stability issues in tested samples of compounded "semaglutide."[6]

54.    The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[7] In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."

---

[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery.

[6] Morten Hach et al, Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs, Pharm. Res., (Oct. 8, 2024), available at https://pubmed.ncbi.nlm.nih.gov/39379664/.

[7] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

55.     The FDA has stated that the containers and packaging (including multidose vials) used by compounders, the varying product concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.

56.     A publication from the Journal of the American Pharmacists Association also highlighted errors where patients accidentally self-administered doses of compounded "semaglutide" up to ten times greater than the intended amount.[8]

57.     FDA has issued guidance on its "Concerns with Unapproved GLP-1 Drugs Used for Weight Loss," which provides that:  (1) "compounded drugs are not FDA-approved"; (2) use of compounded drugs containing "semaglutide" "can be risky for patients, as unapproved versions do not undergo FDA's review for safety, effectiveness and quality"; and (3) "FDA has received reports of adverse events related to compounded versions of semaglutide . . . . However, federal law does not require state-licensed pharmacies that are not outsourcing facilities to submit adverse events to FDA so it is likely that adverse events from compounded versions of these drugs are underreported."[9]

### DEFENDANT'S TRADEMARK INFRINGEMENT AND FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS

58.     Despite the foregoing, and after NNAS's first use and registration of its Ozempic® and Wegovy® marks, Defendant has used and continues to use Novo Nordisk's Ozempic® and Wegovy® marks to market and sell Unapproved Compounded Drugs purporting to contain

---

[8] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Assc'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.

[9] FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

"semaglutide" that are not Ozempic® and Wegovy® , and has made and continues to make false and misleading representations to patients regarding the nature of its Unapproved Compounded Drugs.

59.     Defendant has falsely advertised and continues to falsely advertise its Unapproved Compounded Drugs by making statements that describe the Ozempic® and Wegovy® medicines but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

60.     Defendant has engaged and continues to engage in the unlawful promotion of its Unapproved Compounded Drugs on its website and social media accounts in connection with its operation of a medspa "[p]roviding vitamin infusions, pellet hormone replacement, weight loss injections and other anti-aging therapies" in locations throughout New Mexico.  *See* **Exhibit D**.

61.     Defendant has made and continues to make unauthorized use of Novo Nordisk's Wegovy® and Ozempic® marks on its website and social media posts.

62.     Specifically, in webpages and blog posts published on its website, Defendant advertises that its Unapproved Compounded Drugs are the same as, equivalent to, or interchangeable with Plaintiffs' Wegovy® and Ozempic® medicines.

63.     For example, on a webpage with the header "Injections for Weight Loss," Defendant states and continues to state:  "Semaglutide is also known as Ozempic or Wegovy . . . Semaglutide (Ozempic® / Wegovy®) . . .  are injectable peptide medications originally developed for type 2 diabetes."  *See* **Exhibit D.**

# Injections for Weight Loss

Schedule Free Virtual Consult >

Semaglutide is also known as Ozempic or Wegovy and tirzepatide is also known as Mounjaro or Zepbound. Studies show that patients can lose up to 15% of their body weight. These injections are **self-administered at home**, making it a convenient and accessible option for those looking to lose weight.

Compounded versions of these popular drugs are available. This is a popular alternative because the compounded versions are less expensive. However, there is a law referred to as "essentially a copy". This means medications can't be compounded that copy a commercially available medication.

**Semaglutide & Tirzepatide Injections for Weight Loss**

**Personalized dosing. Transparent pricing. Ongoing clinical support.**

Semaglutide (Ozempic® / Wegovy®) and Tirzepatide (Mounjaro® / Zepbound®) are injectable peptide medications originally developed for type 2 diabetes. Both have also shown substantial benefit for weight loss—clinical trials show patients may lose up to **15% of their body weight** when combined with lifestyle changes.

64.     In a series of blog posts, Defendant conflates its Unapproved Compounded Drugs with Novo Nordisk's medicines through several statements that use Novo Nordisk's Wegovy® and Ozempic® marks, including the following:

  a.   "Semaglutide, commonly marketed as Ozempic, is a medication that aids in weight loss by regulating appetite and blood sugar."   **Exhibit E.**

  b.   "Commonly marketed as Ozempic or Wegovy, semaglutide acts like a hormone called GLP-1, which controls appetite and regulates blood sugar levels."   **Exhibit E.**

  c.   "Albuquerque's cooler weather and scenic outdoor spaces, like the Rio Grande Bosque and Sandia Mountains, offer great opportunities to complement your **Ozempic injections** with physical activity."   **Exhibit E.**

  d.   " If you're using Ozempic, also known as semaglutide, to support your weight management journey, you can still enjoy everything the season has to offer."   *See* **Exhibit E.**

e. "Ozempic, or semaglutide, works by slowing gastric emptying and regulating blood sugar levels, which can significantly aid in weight management." **Exhibit E.**

f. "Ozempic (generic name: semaglutide) is an FDA-approved* medication designed for adults with type 2 diabetes." **Exhibit E.**

65. Each of the claims, implications, or representations identified in the preceding paragraphs is either false, misleading, or both.

66. Defendant's pervasive use of Novo Nordisk's Wegovy® and Ozempic® marks on its website is unauthorized.

67. By repeatedly using phrases like "commonly marketed as" and "also known as" when identifying Novo Nordisk's FDA-approved medicines or in proximity of the Wegovy® and Ozempic® marks, Defendant falsely and misleadingly indicates that its Unapproved Compounded Drugs are the same as, are substitutes for, are interchangeable with, are an approved generic of, or are therapeutically equivalent to Novo Nordisk's medicines.

68. Defendant in the same series of blog posts published over the course of months repeatedly uses Novo Nordisk's Wegovy® and Ozempic® marks in the blog title or as part of paragraph headers, including the following:

a. "Ozempic and Autumn Eating: Balancing Festive Foods in Albuquerque". **Exhibit E.**

b. "Navigating Festive Fall Foods with Ozempic in Albuquerque". **Exhibit E**.

c. "Managing Weight with Ozempic During Albuquerque's Harvest Season". **Exhibit E**.

     d.   "Embracing Albuquerque's Harvest Season While Managing Weight and Ozempic".  **Exhibit E.**

     e.   "Navigating Seasonal Changes and Staying on Track with Ozempic".  **Exhibit E**.

69.    This pattern of invariably referencing or using Plaintiffs' trademarks when promoting Defendant's products and services is likely to mislead the public into believing that Defendant is selling Ozempic® and Wegovy® medicines or that Defendant's Unapproved Compounded Drugs are mere substitutes for those medicines.

70.    Additionally, Defendant's blogposts often feature videos, publicly-available on the YouTube platform, that describe, refer to, or otherwise discuss Novo Nordisk's Wegovy® and Ozempic® medicines, or make unauthorized use of the corresponding marks, falsely and misleadingly suggesting that its Unapproved Compounded Drugs are the same as, are substitutes for, are interchangeable with, are an approved generic of, or are therapeutically equivalent to Novo Nordisk's medicines.[10]  Screenshots of some of the video content are included below, showing use of Novo Nordisk's marks in content and captions.

---

[10] https://www.youtube.com/@injectionandinfusionclinic6481/videos.



Ozempic for Weight Loss in Albuquerque

 Injection and Infusion Clinic of Albuquerque 
43 subscribers



Your Questions on Ozempic and Wegovy, Answered
12 views • 1 year ago



How Microneedling Can Target Saggy Jowls in ABQ
114 views • 1 year ago



Can I Treat My Back Acne With Microneedling?
235 views • 1 year ago



Explore BHRT Pellets for Women in ABQ
3 views • 1 year ago



Semaglutide in Albuquerque and Its Lasting Impact on Diabetes
2 views • 1 year ago



Elevate Your Life: Testosterone Clinics Near Me in ABQ
8 views • 1 year ago



Microneedling vs. Chemical Peels in ABQ: What You Need to Know
123 views • 1 year ago



Semaglutide Revolutionizing Diabetes Management in Albuquerque
17 views • 1 year ago



Discover BHRT's Power to Improve Postpartum Well Being in ABQ
23 views • 1 year ago



This Is Why People Love Microneedling for Acne Scars
8 views • 1 year ago



Why Microneedling in ABQ is Better Than Laser
4 views • 1 year ago



Semaglutide: More Than Just Weight Loss! | Injection and Infusion Clinic ABQ
34 views • 1 year ago



Microneedling: Before, During, and After | Injection and Infusion Clinic ABQ
11 views • 1 year ago



Ozempic for Weight Loss in Albuquerque
22 views • 1 year ago



The Benefits of Testosterone for Women in ABQ
6 views • 1 year ago



Is Microneedling Painful? Pain Management During and After the Procedure in ABQ
28 views • 1 year ago

71.     Additionally, Defendant has falsely claimed or implied and continues to falsely claim or imply that its Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality.

72.     On its website, Defendant has made and continues to make false and misleading representations regarding FDA approval for its Unapproved Compounded Drugs.

73.     Defendant has stated:  "These injections are FDA-approved for weight loss in adults with obesity or overweight plus a related condition like high blood pressure or cholesterol. Off-label use is common and supported by evidence."  *See* **Exhibit D**.

> **Can I use these medications for weight loss without diabetes?**
>
> Yes. These injections are FDA-approved for weight loss in adults with obesity or overweight plus a related condition like high blood pressure or cholesterol. Off-label use is common and supported by evidence.

74.     The claims, implications, or representations identified in the preceding paragraph are false, misleading, or both.

75.     The FDA does not approve individual molecules like semaglutide, but rather only complete medicines, and the FDA has not approved, or reviewed for efficacy or safety, either semaglutide or Defendant's Unapproved Compounded Drugs.

76.     Instead, the FDA has approved three of Novo Nordisk's medicines that contain semaglutide for the indications outlined in the preceding paragraphs.

77.     Defendant's representations have misled and continue to mislead patients into believing, incorrectly, that the Unapproved Compounded Drugs that Defendant offers has been reviewed and approved by the FDA for safety and effectiveness.

78.     Defendant also has falsely claimed or implied and continues to falsely claim or imply that its Unapproved Compounded Drugs contain the same semaglutide that the FDA

evaluated in the context of reviewing and approving Novo Nordisk's new drug applications for the Wegovy®, Ozempic®, and Rybelsus® medicines.

79.    On its website, Defendant has misleadingly referred to and continues to misleadingly refer to Plaintiffs' FDA-approved medicines Ozempic® and Wegovy® when discussing Defendant's Unapproved Compounded Drugs.

80.    As previously shown above, Defendant has referred and continues to refer to Ozempic® and Wegovy® in statements using phrases such as "commonly marketed as" and "also known as." *See* **Exhibit D**.

Semaglutide is also known as Ozempic or Wegovy and tirzepatide is also known as Mounjaro or Zepbound. Studies show that patients can lose up to 15% of their body weight. These injections are **self-administered at home**, making it a convenient and accessible option for those looking to lose weight.

Compounded versions of these popular drugs are available. This is a popular alternative because the compounded versions are less expensive. However, there is a law referred to as "essentially a copy". This means medications can't be compounded that copy a commercially available medication.

**Semaglutide & Tirzepatide Injections for Weight Loss**

**Personalized dosing. Transparent pricing. Ongoing clinical support.**

Semaglutide (Ozempic® / Wegovy®) and Tirzepatide (Mounjaro® / Zepbound®) are injectable peptide medications originally developed for type 2 diabetes. Both have also shown substantial benefit for weight loss—clinical trials show patients may lose up to **15% of their body weight** when combined with lifestyle changes.

Semaglutide, commonly marketed as Ozempic, is a medication that aids in weight loss by regulating appetite and blood sugar. This means that even when you indulge in the occasional festive food, semaglutide can help prevent overeating. By following a few mindful strategies, you can partake in Albuquerque's autumnal delights while keeping your health in check.

**Schedule A Free Consultation To Learn More About How Semaglutide Can Support Your Weight Loss Journey This Fall.**

Schedule A Free Consultation

81.    Each of the claims, implications, or representations identified in the preceding paragraphs is false, misleading, or both.

82.     Defendant's representations characterizing Ozempic® and Wegovy® as equivalent to "Semaglutide" are misleading and falsely convey to patients that Defendant's Unapproved Compounded Drugs and other "Semaglutide" drugs have been reviewed or approved as generics by the FDA.  They have not.

83.     Novo Nordisk is not directly or indirectly supplying semaglutide to Defendant or any compounding pharmacies from which they may be sourcing their Unapproved Compounded Drugs.

84.     The FDA has not reviewed the "semaglutide" allegedly in Defendant's Unapproved Compounded Drugs for safety, effectiveness, or quality, or otherwise as equivalent in safety, effectiveness, or quality to Novo Nordisk's medicines.

85.     Defendant has no basis to compare the "semaglutide" allegedly in its Unapproved Compounded Drugs to Novo Nordisk's FDA-approved medications containing semaglutide.

86.     Defendant has falsely claimed or implied and continues to falsely claim or imply that its Unapproved Compounded Drugs have been subjected to clinical studies and trials, or have otherwise achieved therapeutic outcomes attributable to the Wegovy®, Ozempic®, and Rybelsus® medicines.

87.     On its website, as shown below, Defendant has referred and continues to refer to studies that on information and belief did not involve the Unapproved Compounded Drugs sold by Defendant.

88.     Listed under the header "Injections for Weight Loss" and a clickable icon that reads "Schedule Free Virtual Consult", Defendant has stated and continues to state:  "Studies show that patients can lose up to 15% of their body weight."  *See* **Exhibit F**.

# Injections for Weight Loss

Schedule Free Virtual Consult  >

Semaglutide is also known as Ozempic or Wegovy and tirzepatide is also known as Mounjaro or Zepbound. Studies show that patients can lose up to 15% of their body weight. These injections are **self-administered at home**, making it a convenient and accessible option for those looking to lose weight.

89.     Defendant in blog posts has also made and continues to make similar statements: "Studies show that medications like Semaglutide can help patients lose up to 15% of their body weight, making it a powerful tool for those looking to make a life-changing shift." *See* **Exhibit F**.

Our team supports you throughout your journey, offering check-ins, personalized guidance, and resources to help manage any side effects. Studies show that medications like Semaglutide can help patients lose up to 15% of their body weight, making it a powerful tool for those looking to make a life-changing shift.

90.     Defendant's other statements concerning clinical studies and trials include the following:

    a.  "Studies, such as those published by the Oxford Academic and ResearchGate, show that semaglutide injections not only help regulate metabolism but also minimize cravings, making it easier to avoid overindulgence." **Exhibit F**.

    b.  "Research shows that combining semaglutide with physical activity can lead to more sustainable weight loss. A 2024 study published in JBJS Journal highlights the positive effects of GLP-1 receptor agonists like semaglutide on body composition and energy levels [source]." **Exhibit F**.

    c.  "A study published in the Journal of Clinical Pharmacology noted that semaglutide effectively reduces hunger and food intake, making it easier to stick to your nutritional goals, especially during tempting seasonal events." **Exhibit F**.

18

d. "Studies have shown that patients using semaglutide can lose up to 15% of their body weight, making it a highly effective option for those struggling with obesity or weight management. According to research published in The Journal of the Endocrine Society, semaglutide has significant potential for weight reduction." **Exhibit F**.

91.    Each of the claims, implications, or representations identified in the preceding paragraphs is false, misleading, or both.

92.    On information and belief, Defendant has not conducted any placebo-controlled studies on its Unapproved Compounded Drugs and is instead misleadingly referring to studies of Novo Nordisk's FDA-approved medicines to promote its Unapproved Compounded Drugs.

93.    On information and belief, Defendant has engaged in and continues to engage in these unlawful practices to attract customers and generate revenues and profits, including by passing off its Unapproved Compounded Drugs purporting to contain "semaglutide" as the Ozempic® and Wegovy® medicines.

94.    Defendant's prominent and misleading use of the Ozempic® and Wegovy® marks is likely to cause patients to believe, incorrectly, that they are purchasing genuine Ozempic® and Wegovy® medicines; that Defendant is a source for Novo Nordisk's FDA-approved semaglutide medicines; and that Defendant's services are provided, licensed, sponsored, authorized, or approved by Novo Nordisk.

95.    Defendant's use of the Ozempic® and Wegovy® marks is without the permission, consent, or authorization of Novo Nordisk.  Defendant has no right to use, and Defendant knows that it has no right to use, the Ozempic® and Wegovy® marks in connection with Defendant's Unapproved Compounded Drugs or otherwise.

96.    Novo Nordisk has no control over the nature, quality, or efficacy of the products sold by Defendant, including the Unapproved Compounded Drugs.

97.    Defendant's labels, advertising, and promotional materials are false and misleading, suggesting or stating an association with Plaintiffs' FDA-approved Ozempic® and Wegovy® medicines when no such association exists.

98.    There is no need for Defendant to use the Ozempic® and Wegovy® trademarks to advertise or promote its Unapproved Compounded Drugs purporting to contain "semaglutide," other than to trade on the reputation of Plaintiffs and to create confusion in the marketplace or mislead the public regarding the origin, identity, or source of Defendant's Unapproved Compounded Drugs.

99.    Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks.  Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[11]

100.    On information and belief, unless enjoined by this Court, Defendant will continue to use the Ozempic® and Wegovy® marks and otherwise falsely advertise its products as

---

[11] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested."); FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery ("Compounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.").

associated with or being the Ozempic® and Wegovy® medicines, all in violation of Plaintiffs' rights.

101.    On information and belief, unless enjoined by this Court, Defendant's unauthorized use of the Ozempic® and Wegovy® trademarks will continue to cause confusion, mistake, and deception, and infringe Plaintiffs' established exclusive rights in those trademarks.

## FIRST CAUSE OF ACTION

### Trademark Infringement in Violation of 15 U.S.C. § 1114(1)

102.    Plaintiff NNAS realleges and incorporates each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

103.    Plaintiff NNAS's Ozempic® and Wegovy® marks are inherently distinctive, strong, valid, and protectable trademarks owned by Plaintiff NNAS.

104.    Plaintiff NNAS's right to use its Ozempic® mark is incontestable and therefore constitutes conclusive evidence of the validity of the mark, of Plaintiff NNAS's registration and ownership of the mark, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registration.

105.    Plaintiff NNAS's trademark registrations for its Wegovy® marks constitute *prima facie* evidence of the validity of the marks, of Plaintiff NNAS's registration and ownership of the marks, and of Plaintiff NNAS's exclusive right to use the mark in commerce on or in connection with the goods identified in the registrations.

106.    By virtue of its prior use and registration, Plaintiff NNAS has priority over Defendant with respect to the use of the Ozempic® and Wegovy® marks for pharmaceutical preparations sold in the United States.

107.    Defendant uses the Ozempic® and Wegovy® marks  in connection with the sale, advertising, and promotion of Unapproved Compounded Drugs purporting to contain semaglutide.

108.    Defendant's use in commerce of the Ozempic® and Wegovy® marks is likely to cause confusion, to cause mistake, or to deceive with respect to Plaintiff NNAS's identical marks.

109.    The above-described acts of Defendant constitute infringement of registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Plaintiff NNAS to relief.

110.    Defendant has unfairly profited from its trademark infringement.

111.    By reason of Defendant's acts of trademark infringement  Plaintiff NNAS has suffered damage to the goodwill associated with its marks.

112.    Defendant's acts of trademark infringement  have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff NNAS, its federally registered trademarks and the valuable goodwill associated with those trademarks.

113.    Defendant's acts of trademark infringement  have irreparably harmed, and if not enjoined, will continue to irreparably harm the interests of the public in being free from confusion, mistake, and deception.

114.    By reason of Defendant's acts, Plaintiff NNAS's remedies at law are not adequate to compensate for the injuries inflicted by Defendant, entitling Plaintiff NNAS to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

115.     By reason of Defendant's willful acts of trademark infringement, Plaintiff NNAS

is entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble

damages, and costs under 15 U.S.C. § 1117.

116.     This is an exceptional case, making Plaintiff NNAS eligible for an award of

attorneys' fees under 15 U.S.C. § 1117.

<u>SECOND CAUSE OF ACTION</u>

**Trademark Infringement, False Designation of Origin, and Unfair Competition
in Violation of 15 U.S.C. § 1125(a)(1)(A)**

117.     Plaintiffs reallege and incorporate each of the allegations in the preceding

paragraphs of this Complaint as though fully set forth here.

118.     Defendant uses the Ozempic® and Wegovy® marks in commerce in connection

with Defendant's goods and services and in commercial advertising and promotion of its goods

and services.

119.     Defendant uses the Ozempic® and Wegovy® marks in commerce in a manner that

is likely to cause confusion, or to cause mistake, or to deceive the relevant public into believing

that Defendant's goods or services are authorized, sponsored, approved by, or otherwise

affiliated with Plaintiffs, with Plaintiffs' genuine Ozempic® and Wegovy® medicines, and with

the Ozempic® and Wegovy® marks.

120.     The above-described acts of Defendant constitute infringement of the Ozempic®

and Wegovy® marks and use of false designations of origin in violation of Section 43(a)(1)(A) of

the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), entitling Plaintiffs to relief.

121.     Defendant has unfairly profited from the actions alleged.

122.     By reason of the above-described acts of Defendant, Plaintiffs have suffered

damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

123.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs, the Ozempic® and Wegovy® trademarks, and the valuable goodwill associated with the trademarks.

124.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

125.    By reason of Defendant's acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant, entitling Plaintiffs to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

126.    Because the above-described acts of Defendant are willful, Plaintiffs are entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

127.    This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

**<u>THIRD CAUSE OF ACTION</u>**

**Defendant's False and Misleading Advertising and Promotion
in Violation of 15 U.S.C. § 1125(a)(1)(B)**

128.    Plaintiffs reallege and incorporate each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

129.    Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

130.    Defendant has violated and continues to violate the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial

advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendant's business practices and products, as set forth above.

131.    Defendant has also engaged and continues to engage in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful.  On information and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs (or whom Defendant is trying to persuade to purchase its drugs) information that makes several false or misleading statements, including those described in paragraphs 59–68 above.

132.    The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

133.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

134.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

135.    By reason of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation.

136.    Because Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendant, entitling Plaintiffs to preliminary and permanent injunctive relief requiring Defendant to cease its false and misleading advertising and promotion and unfair competitive practices.

137. Because the above-described acts of Defendant are willful, Plaintiffs are entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

138. This is an exceptional case, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

<u>**FOURTH CAUSE OF ACTION**</u>

**Unfair Competition in Violation of the Common Law**

139. Plaintiffs reallege and incorporate each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

140. The above-described acts of Defendant constitute common law unfair competition.

141. The above-described acts of Defendant unfairly and wrongfully exploit Plaintiffs' trademark, goodwill, and reputation.

142. By reason of the above-described acts of Defendant, Plaintiffs have suffered damage to the goodwill associated with the Ozempic® and Wegovy® trademarks.

143. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs and the Ozempic® and Wegovy® trademarks.

144. The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

145. By reason of Defendant's acts, Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant, entitling Plaintiffs to enter preliminary and

injunctive relief in addition to disgorgement of Defendant's profits (enhanced at the Court's discretion) and corrective advertising costs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1.      That the Court enter a judgment against Defendant that Defendant has:

   a.   Infringed the rights of Plaintiff NNAS in its federally registered Ozempic® and Wegovy® marks in violation of 15 U.S.C. § 1114(1);

   b.   Infringed the rights of Plaintiffs in the Ozempic® and Wegovy® marks and engaged in unfair competition, in violation of 15 U.S.C. § 1125(a);

   c.   Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a);

   d.   Engaged in unfair competition under New Mexico law.

2.      That the Court declare that each of the above acts was willful.

3.      That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

   a.   using the Ozempic® and Wegovy® marks, including (i) use in any manner likely to cause confusion or mistake, to deceive, or otherwise infringe Novo Nordisk's rights in those marks, or (ii) use in connection with the advertising, marketing, sale, or promotion of any Unapproved Compounded Drugs; and,

   b.   advertising, stating, or suggesting that any Unapproved Compounded Drugs, including any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

i.  are, or contain, genuine or authentic Novo Nordisk Ozempic® and Wegovy® medicines;

ii.  are sponsored by or associated with Novo Nordisk;

iii.  are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

iv.  achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes, including but not limited to by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

v.  achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

vi.  are associated or connected in any way with Novo Nordisk or Novo Nordisk's medicines; or

vii.  contain any ingredient (including semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

c.  engaging in unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines; and

d.  engaging in deceptive acts or practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines.

4.      That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including all advertising, marketing, and promotional materials, that:  (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

5.      That the Court award Plaintiffs monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines and that this monetary relief be trebled due to Defendant's willfulness, in accordance with 15 U.S.C. § 1117 and any applicable state laws.

6.      That the Court award disgorgement to Plaintiffs of Defendant's profits resulting from Defendant's unfair and deceptive trade practices with respect to Novo Nordisk's Ozempic® and Wegovy® medicines.

7.      That the Court order Defendant to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions with respect to Novo Nordisk's Ozempic® and Wegovy® medicines.

8.      That the Court award Plaintiffs punitive damages by reason of Defendant's willful unlawful actions with respect to Novo Nordisk's Ozempic® and Wegovy® medicines.

9.      That the Court award Plaintiffs pre-judgment and post-judgment interest on all damages.

10.     That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable  provision of law.

11.     That the Court award Plaintiffs the costs of suit incurred herein.

12.     That the Court award  such other or further relief as the Court may deem just and proper.

DATED: May 21, 2025.

Respectfully submitted,

**HOLLAND & HART LLP**

By:   */s/ John C. Anderson*
          John C. Anderson
          Olga M. Serafimova
110 N. Guadalupe Street, Suite 1
Santa Fe, NM 87508
Tel: (505) 988-4421
jcanderson@hollandhart.com
omserafimova@hollandhart.com

*Attorneys for Plaintiffs NOVO NORDISK A/S*
*and NOVO NORDISK INC.*